UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIM MARIE SIMS,

       Plaintiff,       CIVIL ACTION NO. 16-cv-11789

   v.                       DISTRICT JUDGE AVERN COHN

COMMISSIONER OF       MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kim Marie Sims seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 16) and Defendant's Motion for Summary Judgment (docket no. 19). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.    RECOMMENDATION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment [16] be **DENIED** and Defendant's Motion for Summary Judgment [19] be **GRANTED**.

II.   PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on March 29, 2013, alleging that she has been disabled since December 31, 2009, due to her physical and mental impairments. (TR 134–35, 136–41.) The Social Security Administration denied Plaintiff's claims on August 2, 2013, and Plaintiff requested a *de novo* hearing. (TR 83, 89, 102.) On September 10, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Patricia S. McKay. (TR 26–52.) In a November 28, 2014, decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 20–22.) The Appeals Council declined to review the ALJ's decision (TR 1–5), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court. (Docket nos. 16, 19.)

### III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. (Docket no. 16 at 5–11.) Defendant discusses Plaintiff's medical record and hearing testimony throughout Defendant's brief (docket no. 19 at 8, 11–16, 18–23), and the ALJ discusses them throughout her decision (TR 17–20.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned incorporates the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014; that Plaintiff had not engaged in substantial gainful activity

since the alleged onset date of December 31, 2009; and that Plaintiff suffered from the following severe impairments: history of relapsing-remitting multiple sclerosis; degenerative disc disease (lumbar spine) with radiculopathy; bulging discs (cervical spine); and obesity. (TR 16.) The ALJ found that Plaintiff's migraine headaches were nonsevere. (*Id.*) Next, the ALJ found that Plaintiff's impairments, either individually or when combined, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ then found that Plaintiff's allegations regarding the extent of her symptoms were "not entirely credible" (TR 18) and that Plaintiff had the following Residual Functional Capacity (RFC):

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except no more than occasional climbing of stairs, crouching, crawling, kneeling, and stooping/bending; she must avoid workplace hazards such as moving machinery, unprotected heights, and ladders, ropes, or scaffolding; the work must be low stress, self-paced/piece work (e.g., avoid a production-rate work environment); she must have the opportunity to alternate between sitting and standing while engaged in the work, as she desires; and she must avoid temperature extremes.

(TR 17.) Subsequently, in reliance on the Vocational Expert's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy, including systems monitor, addresser, and document preparer. (TR 21.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from December 31, 2009, through the date of the decision. (TR 22.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper

3

legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). The court can only "reverse the [ALJ's] decision and award benefits . . . if all essential factual issues have

been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176.

Plaintiff asserts that this matter should be reversed or remanded under sentence four because, she contends, "[t]he ALJ's opinion violates the 'treating physician rule,' erroneously elevating the opinion of a nonexamining physician above that of the treater without good reasons, and her opinion is unsupported by substantial evidence accordingly." (Docket no. 16 at 12.)

Pursuant to 20 C.F.R. §§ 404.1527(d) and 416.927, an ALJ is to "evaluate every medical opinion" submitted in light of a variety of listed factors, which include the nature of the treatment relationship, the supporting medical basis for the opinion, and overall consistency with the larger record. The regulation also sets out a presumptive sliding scale of deference to be given to various types of opinions. An opinion from a treating physician is "accorded the most deference" by the Social Security Administration because of the "ongoing treatment relationship" between the patient and the opining physician. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (internal quotation marks omitted). A nontreating source, who physically examines the patient "but does not have, or did not have an ongoing treatment relationship with" the patient, falls next along the continuum. *Id.* A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is generally afforded the least deference. *Id.* In "appropriate circumstances," however, "opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3. For example:

> [T]he opinion of a State agency medical . . . consultant . . . may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's

> particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

*Id.* The Sixth Circuit has also held that an "administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records." *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014) (citing *Gayheart v. Comm'r of Soc Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013)).

Nevertheless, an ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527, 416.927(c)(2). When an ALJ determines that a treating medical source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. 404.1527(c)(2)–(6), 416.927(c)(2)–(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§1527(c)]—the provision of the procedural safeguard of

reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires her ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'" (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Plaintiff has treated with Martin Belkin, D.O., a neurologist, for her physical impairments for over ten years. (TR 253.) On September 10, 2014, Dr. Belkin completed a Medical Assessment of Ability to Do Work-Related Activities form, in which he opined that Plaintiff would likely miss 10 days of work per month. (TR 250.) He further opined that Plaintiff could lift 10 pounds occasionally and 5 pounds frequently; stand/walk for 3 hours in an 8-hour workday, sit for 4 hours in an 8-hour workday (and do neither for more than 30 minutes at a time); never climb or balance and only occasionally stoop, crouch, kneel, and crawl; frequently

reach, handle, finger, see, hear, and speak, but only occasionally push/pull; and that she should avoid heights, moving machinery, temperature extremes, and humidity. (TR 250–52.) He opined that Plaintiff's ability to work would be further affected by her "extreme fatigue, weakness, headaches, [and] back pain." (TR 253.) In support of his findings, Dr. Belkin cited Plaintiff's "longstanding complaints of weakness in her legs, extreme generalized fatigue," and "intractable low back and leg pain related to a disc herniation confirmed by MRI . . . ." (TR 250.) As the ALJ noted, if fully credited, this report would support a finding of disability "in that [the report's] sit/stand/walk durations add up to only seven hours." (TR 19.)

Quan Nguyen, M.D., the nonexamining state agency medical consultant, issued his findings regarding Plaintiff's functional limitations in a Disability Determination Explanation, dated August 1, 2013. (TR 59–68.) Dr. Nguyen opined that Plaintiff was capable of sedentary work, finding that she could occasionally lift more than 10 pounds and frequently lift "less than 10 pounds"; stand/walk a total of 2 hours in an 8-hour workday, and sit (with normal breaks) for a total of 6 hours in an 8-hour workday; that she could never climb ladders/ropes/scaffolds, but could occasionally climb ramps/stairs, crawl, and stoop, and could frequently kneel and crouch. (TR 74–75.) He further found that she must avoid hazards such as machinery and heights. (TR 76.)

In weighing these opinions, the ALJ declined to give Dr. Belkin's opinion "significant weight," writing:

> While the neurology opinion seemingly supports disability in that its sit/stand/walk durations add up to only seven hours, it clearly conflicts with the claimant's testimony and her presentation at the July 2013 consultative examination.[1] Moreover, the neurologist cites the claimant's subjective

---

[1] The ALJ noted that Plaintiff testified, regarding daily activities, that she does "little else other than alternating sitting, lying down, and napping," and that "her pain and fatigue levels preclude performance of any sustained work activity." (TR 17–18.) The ALJ also noted that, at her consultative exam, Plaintiff "reported that her activity is 'none at all' and that she is 'barely able to take care of herself' (Exhibit 2F)."

9

> complaints of "extreme fatigue" and "weakness" as rationale for the less than eight-hour stand/walk/sit ability. First, one would expect the claimant to report such "extreme fatigue" to her primary care provider; however, a careful review reveals no such complaint (Exhibit 5F). Additionally, the most recent neurology note (June 2014) simply indicates the claimant "does have fatigue for which she uses Provigil on occasion, if needed" (Exhibit 3F). Such indication is hardly indication of "extreme" fatigue. Further, the claimant's review of systems was essentially unremarkable, with the physical exam indicating full muscle strength; normal tone; and some noted *mild* hip weakness *with some giveaway component* (Exhibit 3F). The note indicates the claimant has been clinically and radiologically stable (Exhibit 3F). There is no indication of any medication side effects or requirement of any assistive device.
>
> . . . . [T]he undersigned declines to afford the treating neurologist's opinion significant weight, as his notes repeatedly indicate the claimant's MS is stable and notes describe her fatigue as managed with medication on an as-needed basis. Overall, the undersigned simply finds the claimant presented as less than entirely credible with extreme allegations that conflict with her treatment notes. Although the neurologist's opinion indicates the claimant could work a seven-hour day, the undersigned finds no reason the claimant would be unable to sustain a regimen of limited sedentary work of a low-stress, self-paced nature.

(TR 19–20.) By contrast, the ALJ assigned "significant weight" to Dr. Nguyen's opinion, writing:

> Dr. Nguyen cited degenerative disc disease and a history of stable multiple sclerosis (per neurology) with "minimal abnormal physical findings" (Exhibits 1A and 2A). Upon careful review of later-submitted evidence (i.e., Exhibits 3F-5F), and upon careful assessment of the claimant's credibility, the undersigned finds no good reason to depart substantially from Dr. Nguyen's residual functional capacity opinion. Accordingly, . . . Dr. Nguyen's opinion has been afforded significant weight. Further, consistent with Dr. Nguyen's suspicions, the undersigned declines to afford the consultative examiner's July 2013 report much weight. Dr. Nguyen rightfully points out that the consultative examiner's report "showed more abnormalities comparing to [treating] Neurology [notes]" (Exhibits 1A and 2A). In fact, such noted July 2013 abnormalities stand in stark contrast to treating notes dated from June 2013.

(TR 18 (alteration in original).)

---

(TR 18.) The ALJ also noted that, during the consultative exam, Plaintiff "was 'not able to walk on her own at all' and she needed 'full assistance to get in and out of the chair and off the examination table' (Exhibit 2F)."

After careful consideration, the undersigned finds no error in the ALJ's weighing of the opinion evidence. First, as the ALJ points out, some of Dr. Belkin's findings are inconsistent with the other substantial evidence in the record. Dr. Belkin opined that Plaintiff was unable to work a full eight-hour work day, based, in part on Plaintiff's "longstanding complaints of weakness in her legs, extreme generalized fatigue." (TR 250.) The ALJ points out that the records of Plaintiff's primary care physician, Dr. Seymour Weiner, reflect no complaints regarding Plaintiff's fatigue at all, despite the fact that Plaintiff was seeing Dr. Weiner at the same time she was seeing Dr. Belkin. (*See* TR 254–93.) Dr. Belkin also never prescribed any medication or other therapy for Plaintiff's fatigue other than the medication Provigil, which Plaintiff only takes "on occasion, if needed." (TR 237.) This weighs against Dr. Belkin's finding that Plaintiff's extreme fatigue prevents her from completing a full work day. Plaintiff argues that Dr. Belkin noted, on more than one occasion, that Plaintiff's fatigue was "prominent" and "longstanding," and that Dr. Belkin also noted once that the Provigil provided only "moderate benefit." (Docket no. 16 at 16.) While this may be true, Dr. Belkin never prescribed anything other than Provigil for Plaintiff's fatigue; nor did he ever write in his notes that Plaintiff should increase the dosage or take the medication regularly rather than on an as-needed basis.

Moreover, as the ALJ notes, despite Plaintiff's complaints to Dr. Belkin about weakness in her legs, Dr. Belkin's most recent exam notes (just two months before Dr. Belkin gave his disabling opinion), reflect that Plaintiff's "[m]uscle strength objectively is full, with the exception of some mild weakness of her left hip flexors with some giveaway component," and that Plaintiff's "[t]one is normal." (TR 238.) Defendant also points out that Dr. Belkin's records reflect that Plaintiff's MS has been clinically stable since early 2009. (Docket no. 19 at 13 (citing TR 216, 214, 206, 204, 201).) Plaintiff argues that the stability of her MS does not

necessarily indicate that her MS is nondisabling or that it does not cause her extreme fatigue and weakness. (Docket no. 16 at 15.) While Plaintiff may be correct, the ALJ also points out that Dr. Belkin's notes state that Plaintiff worked, cleaning houses, at late as September 2012. (TR 18.) Plaintiff's ability to work in a relatively laborious job as late as September 2012, combined with the fact that Dr. Belkin's notes show that Plaintiff's MS has not worsened since that time, weighs against the credibility of Plaintiff's allegations and therefore calls into question the accuracy of Dr. Belkin's opinions.

Finally, as the ALJ notes, Dr. Belkin's opinions are inconsistent with Plaintiff's own description of her condition at the hearing and in her disability application paperwork. (TR 19.) This inconsistency is particularly significant in this case, where it appears that Dr. Belkin's opinions were based in part on Plaintiff's "longstanding complaints." (TR 250.)

Having concluded that Dr. Belkin's opinions were not controlling, the ALJ "decline[d] to afford [Dr. Belkin's] opinion significant weight." (TR 19.) The ALJ explains that Dr. Belkin's "notes repeatedly indicate the claimant's MS is stable and notes describe her fatigue as managed with medication on an as-needed basis." (*Id.*) As described immediately above, these findings by the ALJ are supported by substantial evidence in the record. Moreover, they constitute "good reasons" for discounting Dr. Belkin's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6) (listing factors including supportability of the opinion, and consistency of the opinion with the record as a whole). The ALJ's opinion also makes clear that Dr. Belkin's reliance on Plaintiff's subjective complaints (which the ALJ found to not be fully credible) was an additional reason for discounting Dr. Belkin's opinion.

Plaintiff points out that Dr. Belkin is a neurologist, and therefore a specialist with regard to Plaintiff's MS and the issues with her spine, while Dr. Nguyen, whose opinion the ALJ does

credit, is a family practitioner. (Docket no. 16 at 17–18.) Plaintiff also points out that Dr. Nguyen rendered his opinion in this case prior to receiving Dr. Belkin's opinion.²

While these factors would weigh in favor of crediting Dr. Belkin's opinion over Dr. Nguyen's, there are other factors, discussed above, which weigh in favor of crediting Dr. Nguyen's opinion over Dr. Belkin's. The presence of factors which tend to support Plaintiff's position does not, without more, show error.

Plaintiff also argues the ALJ totally disregarded Dr. Belkin's diagnosis of lumbosacral radiculopathy, and that the ALJ's "summary disregard of Dr. Belkin's opinions ignores many other significant findings, including occasional blurred vision, urinary and bowel problems, and a lack of balance." (Docket no. 16 at 16.) But the ALJ specifically found that Plaintiff's degenerative disc disease was accompanied by a radiculopathy, and she included a number of environmental and other limitations into Plaintiff's RFC which address, in particular, Plaintiff's balance issues. In other words, the ALJ did not summarily disregard Dr. Belkin's radiculopathy diagnosis or Dr. Belkin's other opinions; the ALJ included them in a number of relevant ways, finding that Plaintiff "must avoid workplace hazards such as moving machinery, unprotected

---

² Plaintiff cites SSR 96-6p in support of her argument. As discussed above, this Social Security Ruling provides that "[i]n appropriate circumstances" a state agency consultant's opinion may be entitled to greater weight, and it gives the example of a case where the state agency consultant's opinion is based "on a review of a complete case record that includes a medical report from a specialist . . . which provides more detailed and comprehensive information than what was available to the individual's treating source." SSR 96-6p, 1996 WL 374180, at *3. Plaintiff argues that this is not the case here, where Dr. Nguyen is not a specialist and furthermore did not yet have Dr. Belkin's opinion before issuing his own opinion that Plaintiff was capable of performing the requirements of sedentary work (with modifications). Plaintiff is correct that this case does not involve a specialist consultant with a more complete case file; however SSR 96-6p clearly provides just one example of a situation where crediting the state agency consultant's opinion over the treating physician is appropriate. The undersigned finds it is also appropriate here, where there are inconsistencies between the record evidence and Dr. Belkin's opinion, and where Dr. Belkin relied in part on Plaintiff's subjective complaints which the ALJ also found were not credible. *See Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014) (citing *Gayheart v. Comm'r of Soc Sec.*, 710 F.3d 365, 379–80 (6th Cir. 2013)) (ALJ "may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records.")

heights, and ladders, ropes, or scaffolding," and can only occasionally be expected to climb stairs, crouch, crawl, kneel, or stoop/bend. (TR 17.) The ALJ also limited Plaintiff to self-paced work in which she is permitted to alternate between sitting and standing at will. (*Id.*) Indeed, the only significant differences between the ALJ's formulation of Plaintiff's RFC and Dr. Belkin's opinion is that the ALJ found Plaintiff could complete a full 8-hour work day (Dr. Belkin's opinion only provides for up to 3 hours sitting and up to 4 hours standing/walking), and the ALJ placed no restrictions on Plaintiff's ability to push/pull (which Dr. Belkin said she could do only occasionally), or on Plaintiff's ability to reach, handle, finger, see, hear, and speak (which Dr. Belkin said Plaintiff could do "frequently" but not "constantly").

On review of the record of the medical opinion evidence, this appears to be a close case; that is, the Court finds the ALJ could have "gone either way" in weighing the medical opinion evidence. However, there is substantial evidence supporting the ALJ's decision to not to give significant weight to Dr. Belkin's opinion, and to instead give significant weight to Dr. Nguyen's opinion. Thus, Defendant's decision must be affirmed, even if the Court would have decided the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even though substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). Therefore, the undersigned recommends denying Plaintiff's Motion.

## VI.    CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 16) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 19) be **GRANTED**.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 2, 2017    s/ Mona K. Majzoub
             MONA K. MAJZOUB
             UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: May 2, 2017    s/ Lisa C. Bartlett
             Case Manager